UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Angela Alcazar, et al., | No. 2:19-cv-01209-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| OEI Holdings, LLC, et al., | |
| Defendants. | |

Plaintiffs move this court to preliminarily approve their unopposed proposed settlement of this class action. As explained below, the court approves the preliminary settlement.

I.  **BACKGROUND**

   **A.   History**

This court has summarized this case's history in a previous order and incorporates that summary by reference here. *See* Prior Order (Aug. 15, 2022), ECF No. 55. In its prior order, the court denied without prejudice plaintiffs' previous motion for preliminary approval of a proposed settlement, Initial Mot, ECF No. 51, finding three deficiencies in the proposed settlement, Prior Order (Aug. 15, 2022). The court found the prior proposed settlement did not: (1) "specify what FLSA claims are subject to [] release nor discuss the value of these claims," (2) "explain this court's authority to approve a settlement that releases FLSA claims without first certifying a

collective action" and (3) include an opt-in notice for the FLSA claims in their notice of settlement. *Id.* at 6–7.

### B. Renewed Motion

Plaintiffs have submitted a renewed motion for preliminary approval of class and collective action settlement. *See* Notice of Mot., ECF No. 61. For settlement purposes, class members for both the Rule 23 class and the FLSA collective action number approximately 539 agricultural packing workers who were employed by defendants between June 28, 2015, and June 1, 2018. Mot. at 17, ECF No. 61–1; Mallison Decl. Ex. 1 (Settlement Agreement) at 2, ECF No. 61–3. The parties estimate the total value of plaintiffs' claims to be $815,477. Mallison Decl. ¶ 33, ECF No. 61–2. The parties' settlement agreement provides a Gross Settlement Amount (GSA) of $397,500—roughly 49 percent of plaintiffs' estimated value—with an escalator provision providing the GSA may be increased based on the total number of workweeks. *Id.* ¶¶ 18, 21. The parties agree certain amounts will be subtracted from the GSA: $132,500, or one-third, will cover attorneys' fees, $12,000 will cover litigation costs and $7,500 will be paid to each of the six named plaintiffs as service awards. *Id.* ¶ 21; Settlement Agreement ¶ II. The parties further allocate $10,000 to administer the settlement, Second Mallison Decl. ¶ 2, ECF No. 67–1, and $50,000 toward the PAGA action, Settlement Agreement ¶ I.Y.[1] The GSA amount also covers "FLSA Claim Payments to all Participating Class Members who return FLSA Opt-In forms." Mot. at 6; Settlement Agreement ¶ I.P.

Overall, the proposal provides a net settlement amount of approximately $160,500. Mot. at 11. This amount will be distributed on a pro rata basis based on the number of workweeks worked by each class member. Settlement Agreement ¶ III.D.1. The parties estimate the average distribution to each class member will be "just under" $300. Mot. at 11. Unclaimed funds will be distributed cy pres to Legal Aid at Work. *Id.* at 12–13.

---

[1] The settlement provides 75 percent, or $37,500, of the PAGA fund will be paid to the Labor and Workforce Development Agency (LWDA), as required by the California Labor Code. *Id.* ¶ I.S.

2

If the court approves the settlement, Rule 23 class members will release all non FLSA claims. Settlement Agreement ¶ III.F.5.a. Members of the putative class may also opt out or object. Mallison Decl. ¶ 28. Class members who timely return their FLSA opt-in forms will also release their FLSA claims in return for a FLSA claim payment. Settlement Agreement ¶ III.F.5.b. Membership in the PAGA subclass is automatic under California law. *See Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015). The parties' proposed notice of settlement informs the recipients about the FLSA collective action and the related opt-in procedures. Settlement Agreement ¶ III.E.2.a.

Plaintiffs move the court to preliminarily approve the settlement. Notice of Mot. The motion is unopposed. The court heard argument on March 10, 2023. *See* Hr'g Mins., ECF No. 66. Stanley Mallison and Daniel Keller appeared for plaintiffs and Ryan Abernathy and John Conger appeared for defendants.

## II.   LEGAL STANDARD

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled in part on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). For example, the class's motivations may not perfectly square with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay an adversary a bit more if the overall deal is better for its client. *See id.* In addition, if the settlement agreement is negotiated before the class is certified, as in this case, the potential for an attorney's breach of fiduciary duty looms larger still because the settlement is not negotiated by a court-designated class representative and counsel. *Hanlon*, 150 F.3d at 1026.

As the Ninth Circuit has recognized, when it comes to reviewing proposed class settlements, "[t]he governing principles are clear, but their application is painstakingly fact-specific," and the court normally sees only the final result of the parties' bargaining. *Staton v.*

3

*Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Balancing these interests, federal courts have long recognized a "strong" policy in favor of settling class actions. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Different standards apply to preliminary approval of a class under Federal Rule of Civil Procedure 23 and conditional certification of a FLSA collective action. Under Rule 23, before notice of a proposed settlement can be sent to a class, the court must determine it "will likely be able to" both (1) "certify the class for purposes of the judgment on proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). The first requirement, likelihood of class certification, requires plaintiffs to satisfy the four prerequisites of Rule 23(a) and show their claim fits within one of the three categories of Rule 23(b). *See Walker v. Life Ins. Co. of the Sw.*, 953 F.3d 624, 630 (9th Cir. 2020). The second requirement, likely approval under Rule 23(e)(2), focuses on the fairness of the settlement for absent class members. The court evaluates preliminarily whether the proposed settlement "is fair, reasonable, and adequate," considering several factors listed in the Rule, such as whether the parties negotiated at arm's length and the terms of any agreement on fee awards. *See* Fed. R. Civ. P. 23(e)(2)(A)–(D). Over the years, the Ninth Circuit has also listed several "guideposts," "warning signs," and "red flags" for district courts to consider, such as the strength of the plaintiffs' case and the amount of fees in proportion to the compensation to class members. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610–11 & nn.18–19 (9th Cir. 2018).

The requirements for certification of FLSA collective actions, by contrast, have developed through decisional law. The members of the collective action must be "similarly situated" to the original plaintiffs. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

4

If FLSA claims are settled, the settlement must be approved by either the Secretary of Labor or a federal district court. *Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (unpublished) (citing *Nall v. Mal–Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013)). In the absence of Supreme Court or Ninth Circuit guidance, district courts often assess whether the settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" under *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). *Dahl v. Bay Power Inc.*, 2021 WL 2313388, at *1 (N.D. Cal. May 28, 2021). A dispute is "bona fide" if there are "legitimate questions" about the defendant's FLSA liability. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016). Additionally, courts often consider many of the same factors that guide preliminary certification of Rule 23 class actions. *See Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *4 (E.D. Cal. Oct. 23, 2018).

The notice requirements of Rule 23 and the FLSA also differ. For classes likely to be certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice may be made by mail, electronic means, "or other appropriate means." *Id.* Rule 23 also imposes specific requirements on the contents of the notice. *See* Fed. R. Civ. P. 23(b)(2)(B)(i)–(vii). The FLSA is less specific. It provides "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have understood this language as requiring written consent filed with the court, without articulating this understanding in formal holdings. *See, e.g.*, *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("[E]mployees ... become parties to a collective action only by filing written consent with the court." (citation omitted)).

**III.    ANALYSIS**

The court will first analyze whether the parties have cured the deficiencies in their prior preliminary settlement proposal. Then the court will evaluate whether the preliminary settlement proposal satisfies Rule 23 and FLSA's requirements.

5

**A.     Prior Deficiencies in the Proposed Settlement**

As noted above, the court found three deficiencies in the parties' prior proposed preliminary settlement. Prior Order (Aug. 15, 2022) at 6–7. The court finds the parties have now cured these defects.

**1.     Value of FLSA Claim Payment**

First the court found the first proposed settlement did not "specify what FLSA claims are subject to the release nor discuss the value of these claims." *Id.* at 6. The proposed settlement agreement now includes language on the FLSA claim and allows class members to opt into a FLSA class collective, through which they would "receive an [sic] FLSA Claim Payment." Settlement Agreement ¶ I.Q. The proposed notice packet contains "a procedure for opting-in to the FLSA Released Claims" in writing. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (" . . . in a collective action each plaintiff must opt into the suit by 'giv[ing] his consent in writing.'") (internal citations and emphasis omitted). Plaintiffs estimate the value of FLSA claims to be $146,765. Mot. at 19; Mallison Decl. ¶ 32. "Because those damages are also recoverable under California law," plaintiffs have divided the number in half, and "approximate the value of the FLSA claims" for class collective members will be $73,382.50. Mallison Decl. ¶ 32; *see Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015). This amount covers the claims for "pre- and post-shift work performed off-the-clock" during the "704 days in the applicable FLSA limitations period." Mallison Decl. ¶ 32.

**2.     FLSA Collective Certification**

Second, the court found plaintiffs did not "explain[] this court's authority to approve a settlement that releases FLSA claims without first certifying a collective action." Prior Order (Aug. 15, 2022) at 7. Plaintiffs now ask this court to certify a collective action before approving the settlement releasing FLSA claims. Mot. at 18; *Thompson v. Costco Wholesale Corp.*, No. 14-2778, 2017 WL 697895, *7 (S.D. Cal. Feb. 22, 2017). The court discusses the merits of the proposed collective action in section C below.

### 3. Notice Plan for FLSA Claims

Third, plaintiffs did not include an opt-in notice for the FLSA claims in their notice of settlement. Prior Order (Aug. 15, 2022) at 7. Plaintiffs' proposed settlement agreement now contains adequate notice to potential collective action members, satisfying the requirement that notice forms explain:

> (1) the hybrid nature of th[e] action; [ ] (2) the claims involved in th[e] action; (3) the options that are available to [ ] Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collection action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.

*Thompson*, 2017 WL 697895, at *8 (quoting *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 1878918, at *4 (N.D. Cal. May 3, 2013)). Plaintiffs' notice packet, discussed in detail in section C, includes the necessary information. *See generally* Ex. 1 (Notice Packet), ECF No. 67–2.

### B. Rule 23 Class Action Certification

Plaintiffs first seek preliminary certification of the proposed California class under Rule 23. Mot. at 14. The class includes "539 agricultural packing workers" who worked for defendants "between June 28, 2015, and June 1, 2018." *Id.* at 6. As summarized above, Rule 23(a) imposes four prerequisites on every class. If these prerequisites are satisfied, the proposed class must fit the requirements of one of the three subsections of Rule 23(b). Finally, Rule 23(e) imposes several additional requirements when, as here, the parties have proposed to settle a putative class action.

#### 1. Rule 23(a)—Prerequisites

First, the class must be "so numerous that joinder of all members is impracticable." Fed. Civ. P. 23(a)(1). Joinder is "impracticable" when it is difficult or inconvenient. *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2019 WL 280294, at *4 (E.D. Cal. Jan. 22, 2019) (citing *In re Itel Sec. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981)). Although "no fixed number . . . satisfie[s] the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not." *Ries v. Ariz. Beverages*

*USA LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012).  Here, there are 539 members in the proposed class.  Joinder of each putative member would be impracticable, so the numerosity requirement is satisfied.

Second, a proposed class can be certified only if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The "claims must depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The court considers "the capacity of [the] classwide proceeding to generate common answers" and takes note of "[d]issimilarities within the proposed class [ ] [that] have the potential to impede the generation of common answers."  *See Millan v. Cascade Water Servs., Inc.*, 310 F. R. D. 593, 604 (E.D. Cal. 2015) (quoting *Dukes*, 564 U.S. at 350) (internal quotation marks omitted).  "[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'"  *Franco v. Ruiz Food Prods., Inc.*, No. 10-02354, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F. 3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

Here, plaintiffs assert claims arising from "[d]efendant's alleged failure to provide [c]lass [m]embers with a sufficient number of time clocks to punch in/out, resulting in them having to line up and wait several minutes before" clocking in and resulting in "upaid work time [] [and] meal and rest break violations" Mot. at 6; Second Am. Compl. (SAC) ¶¶ 30–35, ECF No. 36.  Plaintiffs also allege defendants did not provide plaintiffs with necessary equipment, such as pairs of gloves.  *Id.* ¶ 24.  Defendants' alleged failures applied to all class members, presenting common questions suitable to resolution with common answers.  *Dukes*, 564 U.S. at 350.

At the same time, the court notes the motion lacks detailed information regarding the makeup of the class.  Plaintiffs provide no further details besides describing the class as comprised of low paid workers in the agricultural packing industry, *see generally* SAC, leaving unanswered questions that could affect the court's ultimate determination when plaintiffs' seek final approval.  For example, were all class members compensated in the same, or similar,

8

manner, and at the same, or similar, rate? *See Millan*, 310 F. R. D. 593, 604 (E.D. Cal. 2015) (quoting *Dukes*, 564 U.S. at 350) (internal quotation marks omitted). While the court will need more detailed information prior to final approval, it finds the information supporting plaintiffs' motion sufficient to find there are common questions of law for all members.

Third, "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled in part on other grounds by Dukes*, 564 U.S. at 338)). Under this "permissive" requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). Here, defendants' conduct applied to all members of the class, and plaintiffs' injuries were typical, if not identical, in that all proposed class members suffered lost wages and meal and rest break violations. Mallison Decl. ¶ 37. Therefore, the typicality requirement is satisfied.

Fourth, the class representatives and their counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating this requirement, courts consider both whether "(1) [ ] the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) [ ] the named plaintiff and their counsel [will] prosecute the action vigorously on behalf of the class[.]" *Hanlon*, 150 F.3d at 1020. "Serious conflicts of interest can impair adequate representation by the named plaintiffs, yet leave absent class members bound to the final judgment, thereby violating due process." *In re Volkswagen*, 895 F.3d at 607. Plaintiffs' counsel describes the process of reaching settlement as including "extensive investigation, discovery, and expert assessment of damages," Mallison Decl. ¶ 38, with the parties participating in formal mediation in June 2021, Mot. at 9. Plaintiff's counsel is very experienced in wage and hour class action cases. Mallison Decl. ¶ 6. The briefing suggests the lead plaintiffs themselves

9

participated in the discovery process. *Id.* ¶ 38. However, the disparity between the $7,500 service award for each named plaintiff and the average $300 award for class members could reflect a conflict of interest undermining the adequacy of representation. This disparity is discussed in sub-section 3 below.

At this stage, the plaintiffs' claims satisfy the four prerequisites of Rule 23(a) so as to warrant preliminary approval.

### 2.  Rule 23(b)—Type of Proposed Class

Plaintiff seeks certification under Rule 23(b)(3). Mot. at 23. A Rule 23(b)(3) class may be certified only if (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and internal quotation marks omitted). "The superiority inquiry . . . requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (citation omitted). Rule 23 lists "non-exclusive factors" to consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *Hanlon*, 150 F.3d at 1023.

Wage and hour class actions are likely to be certified under this standard when "the major questions in [the] case arise from [the defendants'] alleged [] failure to properly calculate wages

and overtime, account for meal periods and rest periods, and provide reimbursements." *Smothers*, 2019 WL 280294, at *7. That may be true even when some factual questions call for individualized evidence. *See, e.g.*, *Pena v. Taylor Farms Pac.*, 305 F.R.D. 197, 213–22 (E.D. Cal. 2015). An employer's uniform policies often predominate when they apply to the entire putative class and when class members did or do the same or similar work. *See, e.g.*, *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 964 (9th Cir. 2013); *Smothers*, 2019 WL 280294, at *7. The court may not, however, "rely on uniform policies 'to the near exclusion of other relevant factors touching on predominance.'" *Abdullah*, 731 F. 3d at 964 (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F. 3d 953, 955 (9th Cir. 2009)).

Here, plaintiffs claim common questions of law and fact predominate because all class members were subject to the same policies and alleged failures of defendants regarding overtime and rest breaks. Mot. at 6; *Smothers*, 2019 WL 280294, at *7. Thus, the primary questions turn on defendants' policies and their impact on the provision of adequate supplies such as gloves and access to time-clocks to employees, all of whom were employed to carry out similar work. At the same time, as noted above, the court is concerned by the lack of detailed information provided regarding the similarities in pay structures and pay amounts for class members, on this record it appears sufficient additional information can be provided by the time of preliminary approval. The court finds preliminarily the questions common to the class predominate.

Because all proposed class members appear to have performed similar work and were subject to the same alleged inadequate policies, the court finds the record at this stage supports a preliminary conclusion the class action is the superior method for resolving this matter. *See Abdullah*, 731 F.3d at 965.

In sum, the proposed class appears likely to be certified under Rule 23(b)(3) at this preliminary stage.

/////

/////

/////

### 3.     Rule 23(e)(2)—Preliminary Certification and Approval

Under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only after a hearing and only on finding that it is fair, reasonable, and adequate . . . " after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  Ninth Circuit decisions predating this rule list several similar factors district courts may consider when weighing a proposed settlement agreement, including:

- the strength of the plaintiffs' case;
- the risk, expense, complexity, and likely duration of further litigation;
- the amount offered in settlement;
- the extent of discovery completed and the stage of the proceedings; and
- the experience and views of counsel.

*In re Volkswagen*, 895 F.3d at 610 n.18 (quoting *Hanlon*, 150 F.3d at 1026); *see also* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2018 Amendment (explaining factors listed in Rule 23(e)(2) are not intended to "displace" factors listed in existing judicial decisions). The court here addresses the relevant factors, noting that when, as here, a settlement agreement has been negotiated before a class has been certified, there is no presumption of a fair and reasonable settlement, and the court must "undertake an additional search for 'more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect

the negotiations.'" *In re Volkswagen*, 895 F.3d at 610–11 (quoting *Bluetooth*, 654 F.3d at 946–47). The court is primarily concerned with the lack of detail supporting a finding that the parties' negotiations were in fact arms-length, the attorneys' fees and the lead plaintiff incentive fees.

First, the court notes the parties make only conclusory statements regarding their arms-length negotiations. *See* Mot. at 6, 16 ( "[T]he [parties] conducted held arms-length negotiations with the assistance of well-known and respected mediator Mark Rudy."). Similarly, the briefing provides little information to help the court ascertain how parties weighed the costs and risks of trial against the proposed settlement amount, *Id.* at 7, or compared the strength of plaintiffs' case with the settlement amount, *See generally id*.

Second, with regard to attorneys' fees, as noted, class counsel intend to seek fees of "up to one third of the gross settlement [] for their reasonable attorneys' fees" as well as reasonable costs of up to $12,000 Mot. at 9, 11. A disproportionate award to counsel can be a "subtle sign[] that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F. 3d at 947 (citations omitted). The benchmark for attorneys' fees in the Ninth Circuit is 25 percent. *See In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018). Departures from that benchmark are possible only if properly supported and justified. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000). Counsel has not provided the court with information to allow a cross-check of the proposed award against the "lodestar" fee. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). This additional information must be submitted along with any proposal for final approval.

Although the parties participated in mediation with a neutral mediator before reaching the settlement before the court, Mot. at 9, the mere fact of mediation alone is insufficient to show fairness, adequacy and reasonableness. *In re Bluetooth*, 654 F.3d at 948 ("the mere presence of a neutral mediator. . . is not on its own dispositive of whether the end product is a fair, adequate, and reasonable settlement agreement."). Plaintiffs represent "[t]he $397,500 [s]ettlement is a reasonable recovery in light of the modest—but not inconsequential— amount of damages [,815,477,] incurred by each Class Member individually and the risks of continued litigation." Mot. at 17. And they note the proposed settlement was reached after "extensive production" by

defendants of data, which plaintiffs' used to calculate damages. Mot. at 7; Mallison Decl. ¶ 16. For final approval, they will need to provide more detail to make this clear, if possible.

Third, the proposed settlement would grant named plaintiffs approximately $7,500 each, Mallison Decl. ¶ 22, compared to the estimated settlement award of "just under" $300 each for class members, Mot. at 11. Although plaintiffs classify this award as a service award, courts commonly refer to these awards as incentive awards, or "payments to class representatives for their service to the class in bringing the lawsuit." *See Radcliffe*, 715 F.3d at 1163. The amount of the incentive awards here is cause for concern, given that they tend to set the named plaintiffs apart from the absent class members; specifically, plaintiffs who stand to receive several thousand dollars extra have an incentive to support agreements unfair to absent class members and can "undermine the adequacy of the class representatives." *Id.* at 1163, 1165 ("Instead of being solely concerned about the adequacy of the settlement for the absent class members, the class representatives now had a $5,000 incentive to support the settlement regardless of its fairness . . . ."). For that reason, although the Ninth Circuit has agreed incentive awards "may be proper," it has "cautioned that awarding them should not become routine practice." *Id.* at 1164. "[I]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003)).

The Circuit has also regularly reversed excessive awards. *Rodriguez v. W. Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009); *Staton*, 327 F.3d at 977–78 (finding total incentive award of $890,000 to be split among 29 named class representatives excessive and unsupported by record); *cf. Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (affirming district court's decision to decline approval for incentive awards totaling $325,000 to be split among five named class members). For example, in *Radcliffe*, the Ninth Circuit reversed a settlement where named plaintiffs received a "$5,000 incentive award[] only if they supported the settlement," while class members received "awards ranging from $26 to $750." 715 F.3d at 1165. In that case, the court found the conditional incentive award by itself invalidated the adequacy of named plaintiffs' representation,

14

but also noted the "significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest . . . ." *Id.* Here, named plaintiffs are not faced with a conditional incentive award, but the disparity between the award amounts is substantial and will require greater support for final approval.

At the same time, the experience of counsel and the cy pres allocation for residual funds favor settlement. The court has noted the adequacy of plaintiffs' counsel above. *See also* Mallison Decl. ¶ 6. The parties have designated a charity to receive any residual funds not distributed through the settlement and proposed a plan for distribution to the charity. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1305 (9th Cir. 1990). Specifically, they have agreed remaining settlement funds will be distributed to "Legal Aid at Work, subject to court approval." Mallison Decl. ¶ 24. "Legal Aid at Work is a 501(c)(3) non-profit organization which assists indigent workers with employment law claims." *Id.* Because this action involves low-paid workers and their employment law claims, it appears to be an appropriate plan, allowing any unclaimed funds to indirectly benefit the entire class. *Six Mexican Workers,* 904 F.2d at 1305.

Despite the concerns regarding potential conflicts of interest reviewed above, the court is mindful of the "strong judicial policy favor[ing] settlement of class actions." *Adoma*, 913 F. Supp. 2d at 972 (citing *Class Plaintiffs*, 955 F.2d at 1276). In light of that policy and the indicators of fairness also described above, the court preliminarily concludes the settlement agreement is likely to be approved under Rule 23(e)(2) if the court's concerns expressed above can be resolved at the final approval stage. That said, the court can offer no assurance that the proposed fee and incentive awards will be approved without the additional information called for by this order. *See, e.g., Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2019 WL 4034478, at *5–7 (E.D. Cal. Aug. 27, 2019) (granting preliminary approval but deferring ultimate decision on fees and incentive awards).

### C. The FLSA Collective

#### 1. Collective Action Certification

Members of a collective action must be "similarly situated" to the original plaintiffs. *Campbell v. City of Los Angeles*, 903 F.3d at 1109 (citing 29 U.S.C. § 216(b)). "Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

The court concludes the members of the proposed FLSA collective action are similarly situated. *See id.* at 1109. Named plaintiffs' claims here share similar issues of fact with collective action members because all proposed collective action members suffered from the same employer actions leading to unpaid work and meal and rest break violations. Mot. at 6; SAC ¶¶ 30–34. However, the same concerns reviewed above apply here: the briefing lacks details about class members and their similarities with respect to one another. Declarations of similarly situated employees can support the plausibility of material similarities among FLSA collective members. *See Smothers*, 2019 WL 280294, at *8 (considering declarations of putative FLSA collective members). While not required, *Campbell*, 903 F.3d at 1109, it would appear declarations could supply the necessary details to complete the record by the time of final approval.

#### 2. FLSA Settlement

The court finds there are legitimate questions about the defendant's FLSA liability because defendants contest liability. Mot. at 18; *Selk*, 159 F. Supp. 3d at 1172. Additionally, as noted above, the court has reviewed the factors necessary for certification of a Rule 23 action, and finds they support preliminary certification. *See Maciel v. Bar 20 Dairy, LLC*, 2018 WL 5291969, at *4.

### D. Proposed Class Notice

Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where a class is certified under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B). "Adequate notice is critical to court approval of a class

16

settlement under Rule 23(e)." *Hanlon*, 150 F. 3d at 1025. Notice must be the "best notice . . . practicable under the circumstances" and must provide "individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
>
> (ii) the definition of the class certified;
>
> (iii) the class claims, issues, or defenses;
>
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
>
> (v) that the court will exclude from the class any member who requests exclusion;
>
> (vi) the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citations omitted).

Here, the parties' proposed notice packet satisfies Rule 23. It explains in plain language the claims at issue, terms of settlement and the instructions on how to opt out or object, along with the corresponding deadlines. *See generally* Notice Packet. It clearly lays out members' "legal rights and options" as well as informs members of the date and location of the final approval hearing. *Id.* at 4–5. Finally, the notice contains a section that provides the phone number for the Settlement Administrator. *Id.* at 5. The court approves the notice plan.

### E. Proposed FLSA Notice

A district court may authorize named plaintiffs in a FLSA collective action to send notice to all potential plaintiffs and set a deadline for plaintiffs to file their consents with the court. *See Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (*Hoffman-La Roche II*). In approving a form of notice for an FLSA action, "courts must be scrupulous to respect judicial neutrality."

1  *Hoffman-La Roche II*, 493 U.S. at 174. "To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.*

As discussed above, the parties have cured the prior deficiencies in the proposed FLSA notice. The proposed notice now requires written consent from members who wish to opt-in to the FLSA collective action, as required. *See Genesis Healthcare Corp.*, 569 U.S. at 75. Additionally, the proposed notice period during which individuals can opt-in to the collective is 45 days, which the court approves. The proposed notice also includes language disclaiming any endorsement of any position in the suit by the court. Notice Packet at 2. The proposed notice is sufficient.

**IV.    CONCLUSION**

For the foregoing reasons, the court grants preliminary approval of the Rule 23 class and proposed FLSA collective for settlement purposes only, but cautions the issues identified above must be addressed before the parties seek final approval. Specifically, at the final approval hearing the parties must be prepared to address the reasonableness of the settlement negotiation, the reasonableness of the proposed attorneys' fees, including in light of a lodestar analysis, and the reasonableness of the named plaintiffs' incentive award. When filing the motion for final settlement approval, the parties should also lodge, *in camera*, the relevant mediation briefs. The court approves and appoints Phoenix Settlement Administrators as Settlement Administrator. The court approves and appoints plaintiffs Angela Alcazar, Rosa Cazarez, America Duarte, Maria Teresa Valdovinos, Maria Juana Zaragoza and Lilian Anguianoas as Class Representatives. The court approves and appoints Mallison & Martinez to represent the Settlement Class as Class Counsel.

The court orders the following schedule, as consistent with the Settlement Agreement, Settlement Agreement ¶ III.E.1:

- Defendants shall provide the Settlement Administrator with the names, most recent known mailing address and telephone number, social security number and the respective number of workweeks that each class member worked for defendants during each respective class period in .pdf format, within 14 days from entry of this order.

/////

- The Settlement Administrator shall mail the class notice packet to class members via first-class regular U.S. Mail within 14 days after receipt of the contact information.

- Class members shall have 45 days from the mailing of notice packets to opt-out. Collective members shall have 45 days from the mailing of notice packets to opt-in.

- Plaintiffs' motion for final approval and attorneys' fees and costs shall be filed 40 days in advance of the final approval hearing

- The final approval hearing is set for **October 13, 2023, at 10:00 a.m.**

This order resolves ECF No. 61.

IT IS SO ORDERED.

DATED: April 7, 2023.

CHIEF UNITED STATES DISTRICT JUDGE