UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Angela Alcazar, et al., | No. 2:19-cv-01209-KJM-AC |
| Plaintiffs, | ORDER |
| v. | |
| OEI Holdings, LLC, aka "Farmington Fresh Sales, LLC" aka "Onions, Inc.", et al., | |
| Defendants. | |

Plaintiffs seek final approval of their agreement to settle their wage and hour claims against defendants. *See generally* Mot., ECF No. 69; Mem., ECF No. 69-1. The court held a hearing on the motion on October 13, 2023. Mins., ECF No. 72. Daniel Keller appeared for plaintiffs. Ryan Abernathy and John Conger appeared for defendants. As explained in this order, the court **grants** that motion with reductions to the proposed attorneys' fees and incentive awards.

I.   BACKGROUND

This court has summarized plaintiffs' allegations and legal claims in two previous orders. *See* 2022 Order, ECF No. 55; 2023 Order, ECF No. 68. By way of brief review, plaintiffs are hourly farm workers employed by defendants, and they allege defendants did not pay them for the time they spent clocking in and clocking out, both before and after their shifts and during breaks, among other claims. 2022 Order at 1–2; Second Am. Compl. ¶¶ 28–35, ECF No. 36. They are

1

pursuing wage and hour claims under California and federal law in this case, and they ask to represent a class and collective of similarly situated workers. 2022 Order at 2.

Several months ago, after conducting discovery and investigating the potential value of the plaintiffs' claims, the parties attended mediation and reached a settlement agreement. *Id.* They proposed a combined class action under Federal Rule of Civil Procedure 23 and collective action under the Fair Labor Standards Act (FLSA). *Id.* The class and collective would release their claims in exchange for a "Gross Settlement Amount" of $397,500. 2023 Order at 2. Up to $132,500 would be deducted to cover attorneys' fees, $12,000 would cover litigation costs, $10,000 would cover the costs of administering the settlement, and $7,500 would be paid to each of the named plaintiffs as "service" or incentive awards. *Id.* In addition, the settlement agreement allocates $50,000 to the plaintiffs' claims under the California Private Attorneys' General Act (PAGA), and by law, 75 percent of that sum will be paid to the California Labor and Workforce Development Agency. *Id.* at 2 & n.1. After these deductions, the parties' agreement would have the remaining $160,500 allocated pro rata based on the number of weeks each member of the class and collective worked. *Id.* at 2. Each member of the class and collective would receive about $300 on average. *Id.* If any funds remain unclaimed, they will be distributed *cy pres* to Legal Aid at Work, an organization that assists low-income workers in California. *See* Mallison Decl. Ex. 4 (Legal Aid at Work financial report), ECF No. 69-6.

The court originally denied the plaintiffs' motion to preliminarily approve the proposed settlement agreement due to uncertainties about the FLSA claims. *See* 2022 Order at 6–8. They then renewed their motion with clarifications and more information. *See* 2023 Order at 2–3. The court granted the renewed motion and preliminarily approved and certified the class and collective action. *See id.* at 5–19. The court cautioned that more information would be needed before it could finally approve the settlement:

- The motion lacked "detailed information regarding the makeup of the class." *Id.* at 8. "For example, were all class members compensated in the same, or similar manner, and the same, or similar, rate?" *Id.* at 8–9; *see also id.* at 11 (noting similar concerns).

2

- The "disparity between the $7,500 service award for each named plaintiff and the average $300 award for class members could reflect a conflict of interest undermining the adequacy of representation." *Id.* at 10.  The court similarly required "greater support" to show the proposed incentive payment is appropriate. *Id.* at 15.

- The parties made "only conclusory statements regarding their arms-length negotiations." *Id.* at 13.  Their briefing provided "little information" about how the parties "weighed the costs and risks of trial against the proposed settlement amount or compared the strength of plaintiffs' case with the settlement amount." *Id.* (citation omitted).  The court required "more detail" to understand whether the gross settlement value was a reasonable recovery. *Id.* at 13–14.

- Plaintiffs' counsel did not provide "the court with information to allow a cross-check of the proposed [attorneys' fee] award against the lodestar fee." *Id.* at 13 (citation and quotation marks omitted).

The parties then provided notice of the proposed settlement.  *See* Mem. at 6; Mitzner Decl. ¶ 4, ECF No. 69-4.  Eighteen people opted into the proposed FLSA collective action. Mitzner Decl. ¶ 8.  One person of the 471 who received the notice opted out of the proposed Rule 23 class. *Id.* ¶ 9.  The settlement administrator received no objections, and no members of the proposed class disputed the workweek records used to calculate their pro rata shares of the settlement fund.  *See id.* ¶¶ 10–11.  As a result, the average total share of the settlement award will be approximately $315 per person.  *Id.* ¶ 16.  Plaintiffs now seek final approval.

**II.    DISCUSSION**

The court has reviewed the plaintiffs' motion for final approval and the attached exhibits. The court also has reviewed the plaintiffs' and defendants' mediation briefs submitted for *in camera* review.  Based on those materials and the parties' answers to the court's questions at the final approval hearing, the court is satisfied the proposed class and collective meet the requirements of Rule 23 and the FLSA.

3

      First, for the reasons explained in the court's previous order, the class is numerous, and the named plaintiffs' claims are typical of the class. *See* 2023 Order at 7–8, 9. The court is now also satisfied common questions predominate and litigation as a class is the superior means of resolving this dispute. *See, e.g.*, Mallison Decl. Ex. 6, ECF No. 69-8 (employee declarations describing time spent waiting to clock in and similarity of claims); Wolfson Decl., ECF No. 69-7 (estimating claim value and describing methods of proof conducive to class-wide analysis).

      Second, for similar reasons, the court finds the members of the proposed FLSA collective are similarly situated and the proposed FLSA settlement is fair and reasonable. *See* 2022 Order at 5 (summarizing relevant legal standards).

      Third, although the gross settlement value is approximately only half as much as the total value plaintiffs' counsel attached to plaintiffs' own claims, it is a reasonable compromise: (1) a settlement avoids a trial and the associated costs; (2) a settlement accelerates the date of recovery; and (3) it is not certain the plaintiffs could prove their case at trial, which could be difficult, as it might have been necessary to rely on the memories of individual class members rather than written records, among other evidentiary hurdles. The court also is mindful of the "strong judicial policy" favoring the settlement of class actions. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012).

      Fourth, the court finds the deductions for litigation and administrative costs are reasonable for a case of this complexity and size. *Cf. Borelli v. Black Diamond Aggregates, Inc.*, No. 14-2093, 2021 WL 5139610, at *7 (E.D. Cal. Nov. 4, 2021) (approving similar cost awards in proposed wage and hour class action).

      The court cannot conclude, however, that the proposed attorneys' fees and incentive payments are fair and reasonable. As the court discussed in its previous order, the benchmark for attorneys' fees awards in the Ninth Circuit is 25 percent. *See* 2023 Order at 13 (citing *In re Easysaver Rewards Litig.*, 906 F.3d 747, 754 (9th Cir. 2018)). Departures from that benchmark are possible only if properly supported and justified. *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000). At the time plaintiffs filed their motion, their counsel had not provided timekeeping records that could permit the court to decide whether they devoted a reasonable

number of hours to this matter; they offered only a summary of total billable hours and rates by timekeeper. *See* Mallison Decl. Ex. 7, ECF No. 69-9. The proposed hourly rates also are significantly higher than the rates typically awarded for comparable work in this district. *Compare, e.g.*, *id.* (proposing up to $997 per hour) *with, e.g.*, *Granillo v. Weatherford U.S., L.P.*, No. 20-01614, 2023 WL 5985321, at *9 (E.D. Cal. Sept. 14, 2023) (collecting authority and concluding $500 per hour appeared to be "higher than [rates] previously accepted by the Eastern District" in proposed wage and hour class action).

At hearing, the court permitted plaintiffs' counsel to submit additional, more detailed timekeeping records, which counsel later submitted for the court's *in camera* review. The court has reviewed these materials *in camera* to avoid the revelation of attorney–client communications and other privileged or protected information. Although these timekeeping records are more detailed than what counsel originally submitted, they do not permit the court to meaningfully evaluate whether counsel devoted a reasonable number of hours to this matter. Most of the entries are only a few words long, cryptic and generic, such as "Reminders Email," "Memorandum," "Case Management" and "Check-In." The court therefore approves only a benchmark award of attorneys' fees, i.e., 25 percent of the gross settlement amount.

Nor can the court conclude on the record before it that incentive awards of $7,500 are fair and reasonable. Courts may consider several factors when deciding whether to award an incentive fee to a named plaintiff: (1) "the risk to the class representative in commencing suit, both financial and otherwise"; (2) "the notoriety and personal difficulties encountered by the class representative"; (3) "the amount of time and effort spent by the class representative"; (4) "the duration of the litigation"; and (5) "the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Smothers v. NorthStar Alarm Servs., LLC*, No. 17-00548, 2020 WL 1532058, at *11 (E.D. Cal. Mar. 31, 2020) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). The named plaintiffs offer only generic, identical descriptions of their efforts to assist counsel. *See, e.g.*, Alcazar Decl. ¶ 11, ECF No. 69-8 (referring to "time . . . spent assisting my attorneys, participating in discovery, and spreading the word among class members, and . . . stress"). The court nevertheless recognizes this action

5

has been pending for several years and has required the named plaintiffs' active participation. They may also "face negative consequences from any employers who assume past participation in litigation is a potential liability." *Borelli*, 2021 WL 5139610, at *7. An incentive award is reasonable, in the amount of $2,500 for each named plaintiff.

### III.  CONCLUSION

For these reasons, the court **grants the motion for final approval in part**:

- Class Counsel is awarded one-quarter (25%) of the Settlement Amount, amounting to $99,375, for attorneys' fees.
- Plaintiffs and Class Representatives Angela Alcazar, Rosa Cazarez, America Duarte, Maria Teresa Valdovinos, Maria Juana Zaragoza, and Lilian Anguiano each are awarded $2,500 pursuant to the terms of the Settlement and for their services as Class Representatives.
- The motion to finally approve the settlement is otherwise granted as proposed.

This order resolves ECF No. 69.

IT IS SO ORDERED.

DATED: January 8, 2024.

_____
CHIEF UNITED STATES DISTRICT JUDGE